BEFORE THE SECOND DIVISION, AUGUST 16, 1951

**No. 55816.**—Universal Transcontinental Corp. *v.* United States, protests 145464–K, etc. (New York).

FORD, Judge: The suits listed in schedule "A," hereto attached and made a part hereof, were filed by the plaintiff seeking to recover certain sums of money alleged to have been illegally exacted as customs duties upon merchandise imported from a foreign country. Duty was levied on the merchandise at the rate of 10 cents per pound and 25 per centum ad valorem under paragraph 1302 of the Tariff Act of 1930, as "Garnetted or Carded Rayon," or "Garnetted rayon." Plaintiff claims said merchandise to be properly dutiable at only 25 per centum ad valorem under the same paragraph, as "filaments of rayon or other synthetic textile, not exceeding thirty inches in length, other than waste, whether known as cut fiber, staple fiber, or by any other name."

The cases were submitted for decision upon an agreed statement of fact, the material portion of which is as follows:

* * * that the merchandise is the result of subjecting rayon waste to a garnetting process; * * * that the merchandise is used in the production of spun yarns, wholly or in part of rayon; * * * that the individual fibers or filaments in the imported product do not exceed 30 inches in length; * * * that the official samples may be received in evidence and marked Collective Exhibit 1.

Counsel for the plaintiff, in his brief filed herein, contends:

That Congress considered the provision relied on by plaintiff sufficiently specific to override other provisions in the same paragraph is shown by its action in expressly excluding therefrom waste. The protests might well be sustained under the doctrine of *expressio unius est exclusio alterius.* However, there is another strong reason for coming to the same conclusion, namely the all-inclusive meaning of the phrase "by whatever name known."

We find ourselves unable to agree with either of the above contentions. For ready reference and a better understanding of the questions presented, said paragraph 1302 is here copied in full:

PAR. 1302. Waste of rayon or other synthetic textile, except waste wholly or in chief value of cellulose acetate, 10 per centum ad valorem; filaments of rayon or other synthetic textile, not exceeding thirty inches in length, other than waste

whether known as cut fiber, staple fiber, or by any other name, 25 per centum ad valorem; noils of rayon or other synthetic textile, 25 per centum ad valorem; garnetted or carded rayon or other synthetic textile, 10 cents per pound and 25 per centum ad valorem; sliver, tops, and roving, of rayon or other synthetic textile, 10 cents per pound and 30 per centum ad valorem.

A reading of the above-copied paragraph indicates that the same was very carefully and precisely worded, and we find nothing in that portion of the paragraph under which claim is made herein which calls for the application of the doctrine of *expressio unius est exclusio alterius*, as contended by counsel for the plaintiff. Having provided in the first part of said paragraph for "waste of rayon," and realizing that "filaments of rayon" might be "waste of rayon" also, when the Congress came to write the provision for "filaments of rayon," it was very careful to exclude therefrom such filaments of rayon as were waste, by use of the words "other than waste." We fail to see anything in the provision for "filaments of rayon or other synthetic textile, not exceeding thirty inches in length, other than waste, whether known as cut fiber, staple fiber, or by any other name," which suggests that the Congress considered that provision sufficiently specific to override other provisions in the same paragraph. By use of the language employed, the Congress simply made clear its intention to classify all waste rayon, including "filaments of rayon," if such were in fact waste, under the first part of the paragraph, as "Waste of rayon or other synthetic textile, except waste wholly or in chief value of cellulose acetate."

An examination of the congressional history of said paragraph 1302 fails to disclose anything contrary to the views expressed above. When H. R. 2667, which later became the Tariff Act of 1930, was under consideration in the Senate, Senator Smoot made the following statement:

MR. SMOOT. Mr. President, from the Committee on Finance I report back favorably with amendments the bill (H. R. 2667) * * * In connection with and accompanying the bill I submit the report of the Finance Committee on the bill (Rept. No. 37).

With reference to paragraph 1302, here under consideration, the report is as follows:

The filaments provided for under this paragraph of the House bill are not confined to the short-length untwisted filaments, other than waste, suitable for use as material in the manufacture of spun rayon yarn on the cotton, silk, or worsted spinning system. *In order to exclude the untwisted filaments of indefinite length which are adaptable for throwing, there is added after the words "filaments of rayon or other synthetic textile," the words "not exceeding 30 inches in length."*

The manufacture of these short, untwisted filaments known as staple fiber, is virtually a new branch of the rayon industry, domestic production having been conducted up to the present time by but one company which manufactures it on a small scale as an adjunct to denier rayon yarns. * * * [Italics ours.] [Congressional Record, vol. 71, p. 3389.]

Coming now to the provision for "* * * garnetted * * * rayon or other synthetic textile," we find that term described in the Summary of Tariff Information, 1948, volume 13, p. 33, as follows:

Garnetted rayon consists of fiber reclaimed from hard-twisted converters' thread waste, fabric ends, tailors' clippings, and rags from discarded hosiery and knitted garments, by a severe shredding treatment on picking and garnetting machines. The latter are similar to carding machines but much sturdier in construction. Woolen-yarn spinners use garnetted rayon waste as a cheapening agent to blend with wool and other fiber stock for the production of low-grade woolen yarns designed for inexpensive suitings, overcoatings, mackinaw cloth, and blanketing fabrics.

In the 1929 Summary of Tariff Information, on the Tariff Act of 1922, p. 1795, under the heading: "ARTIFICIAL SILK WASTE NOT FURTHER ADVANCED THAN SLIVER OR ROVING," we find the following:

Garnetted waste is waste which has been passed through a garnett machine consisting essentially of a large cylinder covered with iron teeth. The process of garnetting reduces hard thread waste to a soft, fluffy stock suitable for reworking. Garnetted waste is carded and spun on the woolen system and is used for the same purposes as wool shoddy; it enters into blankets, mackinaw cloth, overcoatings, and cheap suitings.

In "A Comprehensive Dictionary of Textile Terms," by Alfred Higgins and Rudolph L. LaVault, p. 54, "garnetting" is defined as:

An operation in woolen manufacture whereby cloth rags or wastes are reduced to the fiber stage, ready for reworking into yarns and cloths; a shredding process.

Also in Callaway Textile Dictionary, First Edition, p. 159, "garnetted stock and garnetting" are defined as follows:

Garnetted Stock: Recovered fiber of wool, cotton, rayon, etc., obtained by garnetting rags or thread waste.

Garnetting: The process of recovering the fibers from hard twisted thread wastes, rags, clippings, etc., esp. of wool. The object is thoroughly to break up the material and return it to a fluffy fibrous condition so it can be reused in blends, or in some cases alone. A garnett is used for the treatment.

The foregoing makes clear the fact that garnetting is a process of manufacture whereby the fibers from hard-twisted converters' thread waste, fabric ends, tailors' clippings, rags from discarded hosiery and knitted garments, hard-twisted thread wastes, etc., are recovered and reduced to the fiber stage, ready for reworking into yarns and cloths.

Counsel for the plaintiff, in his brief filed herein, appears to treat the words in said paragraph 1302 "* * * or by any other name, * * *" as being equivalent to the phrase "by whatever name known," and then argues that this case is controlled by *Mason* v. *Robertson*, 139 U. S. 624, and *Smith* v. *United States*, 5 Ct. Cust. Appls. 40, T. D. 34008.

In the *Mason* case, *supra*, it was held that:

* * * The designation, "all chemical compounds and salts, by whatever name known," includes all chemical compounds and chemical salts, used then or thereafter in any science or art, as clearly as if the proper names of each and all of them had been given.

The *Smith* case, *supra*, followed the *Mason* case and held that:

* * * "Fish, * * * *by whatever name known,* packed in oil, in bottles, jars, kegs, tin boxes or cans" is a phrase not difficult of comprehension or of application. When we find fish packed in oil in a tin can, there is no difficulty whatever in saying that it is described by the words quoted. When it is said that the present importation is herrings, and that the phrase does not employ that name, the answer is that while it does not employ the word "herrings," it does include herrings within its terms just as definitely and absolutely as if the word had been employed one or more times, for it includes fish, so conditioned, *by whatever name known.*

The above authorities are unquestionably sound as to the force and effect of the phrase "by whatever name known," but in our opinion that phrase has no application in this case. While it is true that the particular portion of said paragraph 1302 under which claim is made in this case contains the words "* * * whether known as cut fiber, staple fiber, or by any other name, * * *," those words apply only to "* * * filaments of rayon or other synthetic textile, not exceeding thirty inches in length, other than waste, * * *." The merchandise here involved consists of "garnetted rayon," which is an entirely different commodity from "filaments of rayon," for tariff purposes.

Noils, sliver, tops, and roving are each unquestionably composed of filaments of rayon in one form or another, and if we are to classify garnetted rayon under the provision for filaments of rayon, no good reason appears why we should not also classify noils, sliver, tops, and roving of rayon under the provision for filaments of rayon, thus practically emasculating the paragraph as written.

In the enactment of said paragraph 1302, the Congress has, with particular care, provided in one part thereof for filaments of rayon and placed a duty of 25 per centum ad valorem thereon, and in another part of the same paragraph, it made provision for another kind of filament, to wit, garnetted rayon, and placed a different and higher rate of duty thereon. Had it been the intention of the Congress to classify garnetted rayon under the provision for filaments of rayon, no sound reason appears why it should have made provision for garnetted rayon.

It is elementary that the master rule of construction of tariff statutes is so to interpret them as to carry out the legislative intent. It is clear to us, however, from a consideration of the record before us and the congressional history of said paragraph 1302, that although garnetted rayon is also filaments of rayon within the common meaning of that term, the Congress did not, for tariff purposes, so regard it. *United States* v. *Grumbacher*, 27 C. C. P. A. (Customs) 166, C. A. D. 80.

For the reasons stated all claims of the plaintiff are overruled. Judgment will be rendered accordingly.